UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHERINE MORLEY LIEBERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 13-CV-300-JED-TLW |
| | ) |
| NATIONAL CASUALTY COMPANY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

The Court has for its consideration defendant National Casualty Company's Motion to Dismiss and Brief in Support (Doc. 9). Defendant seeks dismissal of plaintiff's breach of contract and breach of the duty of good faith and fair dealing (bad faith) claims on the basis that she lacks contractual privity or third-party beneficiary status.

**BACKGROUND**

On June 17, 2011, plaintiff Katherine Morley Lieberman ("Lieberman") attended the Tulsa Zoo's annual "Waltz on the Wild Side" fundraiser. While at the Zoo, Lieberman stepped into a hole on the property and broke her left ankle. She asserts that her injury and resulting surgery left her with over $33,000 in medical bills. At that time, the Tulsa Zoo was insured by defendant National Casualty Company ("NCC"). The Zoo's premises liability policy with NCC contained a no-fault medical payment provision (the "med-pay provision") that permitted medical payments of up to $5,000 for persons injured at the Zoo regardless of fault.

Lieberman alleges that, on December 11, 2011, she provided the Zoo with a complete copy of her medical records and bills. The Zoo did not make any payment to Lieberman or her medical providers pursuant to the med-pay provision, or otherwise. In October 2011, Lieberman

brought suit against the Zoo to recover for her injury. During the discovery process, Lieberman learned the details of the Zoo's liability policy, including the med-pay provision it contained. On April 19, 2013, Lieberman brought this lawsuit in Tulsa County District Court against NCC based upon NCC's failure to make a payment to her medical providers pursuant to the med-pay provision. Lieberman represents that it was not until she filed suit against NCC that it issued the $5,000 payment. On May 22, 2013, NCC removed the action to this Court. Lieberman's removed petition alleges claims for breach of contract and bad faith. Lieberman is not a party to the insurance contract between the Tulsa Zoo and NCC, but she asserts that she is a third-party beneficiary to the contract and therefore has standing to bring her claims.

## STANDARDS

As a threshold matter, Lieberman argues that NCC's motion is untimely because it is styled as one pursuant to Rule 12(b)(6), which must be filed prior to the filing of an answer. NCC acknowledges that its motion was made post-answer, but asserts that it should be treated as a motion under Rule 12(c); that is, a motion for judgment on the pleadings. Rule 12(c) motions are reviewed under the standard applicable to those made under Rule 12(b)(6) and may be filed after an answer has been filed. Accordingly, the Court will treat defendant's motion as one made pursuant to Rule 12(c). *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) (citing Fed. R. Civ. P. 12(c); (h)(2)) ("If the defendant makes [a Rule 12(b)(6)] motion after filing the answer, the motion should generally be treated as a motion for judgment on the pleadings.").

As noted, in reviewing a motion for judgment under Fed. R. Civ. P. 12(c), the Court applies the same standard to Rule 12(c) motions as it applies to Rule 12(b)(6) motions. *See Brown v. Montoya*, 662 F.3d 1152, 1160 n. 4 (10th Cir. 2011). In considering a motion to

dismiss under Rule 12(b)(6), the inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ][his] claims across the line from conceivable to plausible.'" *Id*. (quoting *Twombly*, 550 U.S. at 547). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id*.

## DISCUSSION

NCC seeks dismissal of Lieberman's claims on the basis that she lacks standing to bring them. More precisely, NCC argues that Lieberman is not in contractual privity with NCC and is not a third-party beneficiary to the insurance contract at issue. Lieberman argues that she is a third-party beneficiary to the contract.

In Oklahoma, an insurer's implied-in-law duty of good faith and fair dealing extends to all types of insurance policies, but "the insurer's duty to deal fairly and act in good faith is limited." *Roach v. Atlas Life Ins. Co*., 769 P.2d 158, 161 (Okla. 1989). "It does not extend to every party entitled to payment from insurance proceeds" because "[t]here must be either a contractual or statutory relationship between the insurer and the party asserting the bad faith claim before the duty arises." *Id*. Oklahoma has extended the duty of good faith and fair dealing in favor of third-party beneficiaries in three situations: named life insurance beneficiaries, *see id*. at 162, automobile passengers covered by uninsured motorist coverage, *see Townsend v. State Farm Mutual Automobile Insurance*, 860 P.2d 236, 238 (Okla. 1993), and employees covered by workers compensation policies, *see Sizemore v. Cont'l Cas. Co*., 142 P.3d 47 (Okla. 2006).

Oklahoma, however, has not extended this implied-in-law duty with respect to no fault med-pay provisions in premises liability policies. In *Rednour v. JC & P P'ship*, 996 P.2d 487, (Okla. Civ. App. 2000), the plaintiff argued that he could pursue a bad faith claim as a third-party beneficiary against the insurer of an apartment complex where he was injured. Rednour argued that, similar to uninsured motorist coverage, premises liability coverage is for the ultimate benefit of third parties such as him, who may recover for injuries under the policy. The Oklahoma Court of Civil Appeals disagreed, noting in pertinent part:

> The purpose behind a business premises liability policy, of which this medical expenses provision was a part, is markedly different. Unlike the owner of an automobile who would normally have personal, family or social reasons for wishing to provide uninsured motorist protection for passengers in an automobile, the primary purpose behind a business owner's purchase of liability insurance is the protection of assets. Medical expense provisions in such policies principally serve that goal by reducing the likelihood of further litigation through the prompt payment of medical expenses of parties injured on the premises without the necessity of them suing the business owner and proving negligence.

*Id*. at 489-90. The court reasoned that Rednour could not be a third-party beneficiary under the circumstances because the liability insurance containing the med-pay provision was not primarily for the protection of Rednour, and that "parties such as Rednour only incidentally benefit from [such] a provision." *Id*. at 490.

Lieberman urges the Court not to follow *Rednour* because she sees a distinction. Specifically, Lieberman focuses on the *Rednour* court's statements regarding the purpose of med-pay provisions; namely, that they encourage prompt payment of medical expenses without the necessity of a lawsuit. Lieberman contends that, because she was forced to bring two lawsuits in order to secure payment under the med-pay provision, the *Rednour* rationale makes the case inapplicable. In essence, Lieberman argues that the Court should disregard *Rednour*

4

because not doing so would encourage insurance companies to do as NCC did here—hold out on paying medical expenses until their hand is forced by litigation.

While the Court does not understand NCC's decision to withhold payment under the med-pay provision, the Court sees no basis to depart from the *Rednour* holding, which is binding Oklahoma precedent in this lawsuit invoking the Court's diversity jurisdiction. NCC's conduct does not undermine the primary rationale of *Rednour*, which is that premises liability insurance is for the protection of the insured's assets. In addition, it is not likely that prompt payment under the med-pay provision would have prevented litigation against the Zoo as Lieberman's medical expenses vastly exceeded the $5,000 limit on the med-pay coverage and the Zoo contested liability for Lieberman's injury. Hence, *Rednour*'s statements regarding prevention of needless litigation through prompt payment carries less weight here. Most notably though, Lieberman's argument ignores the fact that an insured, such as the Zoo in this case, can still pursue a bad faith claim against its insurer where the insurer acts in contravention of a med-pay provision. This adequately serves the goal of preventing needless litigation. The Court therefore finds *Rednour* to be controlling and dispositive of Lieberman's claims for breach of contract and bad faith against NCC. Lieberman is not in contractual privity with NCC and has no basis as a third-party beneficiary under Oklahoma law to bring her contract and bad faith claims.

**IT IS THEREFORE ORDERED** that defendant National Casualty Company's Motion to Dismiss and Brief in Support (Doc. 9) is **granted**. Plaintiff's claims are **dismissed with prejudice**. This case is terminated. A separate judgment of dismissal will be entered herewith.

**SO ORDERED** this 4th day of March, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE